[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION FOR TEMPORARYRESTRAINING ORDER
Plaintiff-appellant Jacobs has brought six administrative appeals to the Superior Court attacking various determinations of the Greenwich Planning Zoning Board of Appeals. All of the determinations involve opposition by Jacobs to approvals or permits bestowed upon his neighbors, defendants Marc and Debra Shore.
Two of said appeals have already been argued before the Superior Court (Karazin, J.) in Stamford, and are awaiting determination, while four more have been assigned for March 14, 1996 before the undersigned Court in Norwalk. The appeals are all pursuant to C.G.S. Section 8-8. This one, CV 95 0146580, was apparently timely taken from a May 29, 1995, action by the defendant-appellee Planning Zoning Board of Appeals within the prescribed thirty days (see Section 8-8 (d)). CT Page 1357-DD
In the particular appeal under which this preliminary injunctive relief is sought, the Greenwich Division of Buildings issued building permit R-9604 to the Shores on or about February 8, 1995, permitting construction of a single family dwelling at 356 Round Hill Road.
On or about March 10, 1995, plaintiff appealed to the Planning Zoning Board of Appeals for reversal of the building permit. This appeal (No. 7894) was heard on May 17, 1995. The Board's decision was published on May 29, 1995, denying plaintiff's appeal. Plaintiff brought its appeal to this Court via complaint of June 8, 1995.
Six and one-half months after bringing his appeal to Superior Court, plaintiff Jacobs, on December 28, 1995, sought a temporary restraining order prohibiting the Shores from continuing construction activity on their property, pursuant to C.G.S. Section 8-8 (g).[1]
It was assigned to this Court and heard on January 31, 1996, February 6, 1996 and February 9, 1996. The Court is in receipt of two briefs each from the parties and entertained testimony from five witnesses (plaintiff Jacobs, Harvey Matthews, Joseph Risoli, Mark Heller and Debra Shore).
Three primary issues have been pursued:
 A. Plaintiff contended the building permit (R-9604) for the Shore's new home was illegal, in general violation of C.G.S. Section 8-3(f):
 "No building permit or certificate of occupancy shall be issued for a building, use or structure subject to the zoning regulations of a municipality without certification in writing by the official charged with the enforcement of such regulations that such building, use j or structure is in conformity with such regulations or is a valid nonconforming use under such regulations."
That which was not "in conformity", in plaintiff's first claim, was a "gatehouse", present since early this century, CT Page 1357-EE which had not been the subject of a special exception to permit said gatehouse to have a new designation as an "accessory use" as a guesthouse, whereas, prior, it had been a primary residence, indeed, the only such building on the Shores' 4-acre lot.
As of the time the building permit under appeal was initially issued, the Shores had pending their petition for a special exception to permit the gatehouse, which, as noted, was theretofore always a dwelling, to an accessory use (here, a guesthouse), in excess of the 1,200 square feet limitation. This special exception was granted on or about March 27, 1995, approximately one and one-half months after the issuance of building permit R-9604.
B. The second claim urges that when the building permit was sought, the defendants had neither sought nor obtained approval of a plan under the Soil Erosion and Sedimentation Control Act, C.G.S. Section 22a-329. Prior to the determination of plaintiff's appeal by the Planning Zoning Board of Appeals re: the issuance of the building permit, a soil plan by the defendants was submitted and approved. In its May 29, 1995, denial of plaintiff's appeal of the issuance of the permit, the Planning Zoning Board of Appeals stated:
 The Board finds that a Soil Sedimentation and Erosion Control Plan was not a requirement when the Seabury House subdivision was approved and would, therefore, not apply. Further, a Soil Sedimentation and Erosion Control Plan and a drainage plan have been approved by the Planning and Zoning Commission Staff and by the Engineering Division of the Department of Public Works, respectively.
(On the trial hereof, each of the neighboring parties produced expert evidence going to establish that (a) at one early post-approval point, certain flaws in the execution of the approved plan existed, and (b) to the contrary, shortly thereafter, such flaws no longer existed. Defendant Debra Shore testified that both experts may have been correct in that work of the kind under discussion was going on during the period between each expert's observations.) CT Page 1357-FF
C. The third claim upon which plaintiff relies is that the defendants have yet to obtain a variance regarding the same "gatehouse" — guesthouse being within the 75-foot front setback area and being in the front yard of the new residence being constructed. The third prong of this third major claim is that the Shores did not obtain a special permit to change from one non-conforming building or use to another. Reliance is placed upon the following sections of the Greenwich Municipal Code, respectively: 6-205(a); 6-144(b) and 6-141(b)(1). The defendants argue that these issues of geographical location require no municipal forgiveness of any kind in that said gatehouse has been where it is since approximately 1910. Further, defendants urge, if they were to be adjudged in error regarding the gatehouse, they would do whatever was necessary to achieve legal compliance, including demolition. Plaintiff's response thereto is that historic district restrictions might be a barrier to that solution.
Aggrievement is specifically found. First, the parties have so stipulated and any other conclusion could not be supported, given the contiguous nature of the properties of the neighboring litigants.
This Court has concluded that it is unnecessary to determine at this time the likelihood of plaintiff's succeeding in the underlying appeal soon to be heard because the Court has found that plaintiff has not made out "cause shown" in the rubric of C.G.S. Section 8-8(g). Nor has plaintiff shown, as is traditionally required in preliminary injunction settings, that he is without adequate remedy at law or will have been the victim of irreparable and imminent harm should he later be vindicated.
Testimony elicited from the Shores' general contractor, Harvey Matthews, revealed that the house's construction will take eighteen months; further, that two months hence, only the foundation and the slab-deck capping it will be done, and that approximately five percent of the approximately $4,000,000 cost of the job will have then been expended. In that same period, the underlying appeals themselves will be approximately three weeks past their court hearing. Of course, there is no guarantee that said underlying appeals will be decided by then. However, it is clear that a decision will then likely be imminent. That is to say, this Court will be finished with its approximately third week of post-hearing consideration of the matter before the CT Page 1357-GG construction project sought to be enjoined is even five percent completed. This is hardly the heavy commitment, relatively speaking, of defendants' resources that would compel a court to turn away from an order to cease construction should plaintiff prevail.
As a result, to the extent an injunction-seeker's plight appears lessened due to a defendant's substantial equity investment, thus prompting a court's reluctance to destroy it, such an inadequacy or reluctance is not likely to exist here.[2]
Another factor suggesting that injunctive relief is not appropriate prior to resolution of plaintiff's appeals to Superior Court is that the court is not convinced that vindication on some or all of the issues regarding the gatehouse would, of necessity, halt construction of the house. That is to say, the gatehouse, at the core of plaintiff's first and third major claims, is so geographically and, arguably, conceptually distinct from the newly permitted residence, that legal compliance in the challenged areas might be deemed possible to achieve whilst progress on the house continues.[3]
The same reasoning also suggests that a victory for plaintiff regarding the approval of the Soil Sedimentation and Erosion Control Plan might not necessarily require cessation of work upon the permitted residence. The engineering expert for plaintiff acknowledged, for example, that all of the facets of such a plan were located and could be installed or altered outside the footprint of the residence.
Although this decision does not turn upon whether plaintiff is likely to prevail, it might be noted that the court has not been given case law holding that one must strictly look to the moment a permit is granted in order to assess its legitimacy. Here, in two areas, subsequent to the issuance of the building permit challenged, collateral approvals issued. Whether those after-effects are wholly to be ignored remains unclear, but in the circumstances of plaintiff's substantial burden, it cannot be presumed that "curative" post-permit actions are entirely without some remedial force.
To the extent that any balancing of the equities as between the plaintiff Jacobs and the defendants Shore is called for, and this court does not find that it is yet required, the following should be observed: any cessation of construction would CT Page 1357-HH jeopardize the opportunity to complete the exterior work needed in order to then allow the interior work to progress during the winter of 1996-97. It was suggested in the testimony of the general contractor and Mrs. Shore that relationships with the architect, sub-contractors and the general contractor would be jeopardized. Further, the defendants hope to place their three children into the school system in September, 1997, a start endangered by any cessation of construction which may be required.
Also, as earlier noted, plaintiff ought not fear that a court would forgivingly conclude that the Shores had been naively lulled onto a layman's primrose path; not a single move by the Shores has gone unlitigated, much less un-examined. The oft-cited maxim that one builds at his peril under a permit being appealed would be true in spades in the case at bar, further reducing the future judicial reluctance plaintiff purports to fear.
However, this Court does not yet perceive the need to compare or weigh competing equities. Rather, plaintiff's claim of entitlement to injunctive relief fails even when scrutinized alone. One might note, however, that a judicial authority is occasionally required to assess the gravity and wilfulness of alleged violations. Here, unlike many situations where some form or level of enforcement is sought in the zoning field, the defendants have not wilfully or contemptuously flown in the face of the need for permission. They have begun to build under a permit, sought, issued and approved, which has withstood appeal to the Planning Zoning Board of Appeals. Were the Court to engage in a balancing of the equities, it seems fair to conclude that they are at least in equipoise, if not tilted toward defendants.
For all the foregoing reasons, the plaintiff's application for a temporary restraining order is denied.
Nadeau, J.